UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES DRISCOLL SMITH,<br><br>　　　　　　　Plaintiff,<br>v.<br>OLVERA, *et al.*,<br>　　　　　　　Defendants. | Case No. 3:23-cv-00225-ART-CLB<br><br>ORDER GRANTING SUMMARY JUDGMENT |

*Pro se* Plaintiff Smith, an inmate in custody of the Nevada Department of Corrections ("NDOC"), brings this 42 U.S.C. § 1983 action against Defendants Brian Olvera, Joshua Taylor, and Jacob Ballensky, who are officers with the City of Elko Police Department. Smith claims that his Fourth Amendment rights were violated when Defendant Olvera used excessive force against him and Defendants Taylor and Ballensky failed to intervene. Defendants seek summary judgment based on qualified immunity. (ECF No. 27).

For the reasons stated, the Court grants Defendants' motion for summary judgment in full.

**I.　Factual and Procedural Background**

**A. Smith Flees from Police and Chase Ensues**

Smith was driving his truck around Elko with a companion at around 1:00am on November 19, 2022, still feeling the effects of methamphetamine he had consumed earlier in the day. (ECF No. 27-3 at 10, 47.) Smith saw a police car behind him. (*Id.* at 48.) The police car was driven by Defendant Olvera, who had noticed that Smith was driving erratically. (ECF No. 27-2 at 48.) After Smith told his companion to get out of the truck, which she did, he drove away from Defendant Olvera. (*Id.*) Defendant Olvera followed and observed Smith speed, run

1

a stop sign, nearly hit a pedestrian, and run a red light. (*Id.*) Smith recalls running the red light and speeding. (ECF No. 27-3 at 48.) Defendant Olvera continued chasing Smith and radioed other officers to intervene. (*See* ECF No. 27-2 at 49.)

For the next several minutes, Smith fled from the police in his truck, hitting at least two police cruisers and a parked car. (ECF No. 27-3 at 51, 53; ECF No. 27-2 at 50.) Nonparty Officer Aaron Gray recalls stepping out of his patrol car, pointing his gun at Smith, and yelling at him to stop, and body-camera footage shows Smith ignoring this command and continuing to drive. (ECF No. 27-2 at 54; ECF No. 27-4 (Olvera) at 3:20–27.) A few minutes later, Smith crashed his truck into a tree behind a veterinarian's office in a residential area. (ECF No. 27-3 at 50; ECF No. 27-2 at 54.)

### B. Olvera Uses Force as Smith Surrenders

Defendant Olvera and Smith tell diverging stories about the next several seconds.

According to Defendant Olvera, Smith's face was already bloody as Defendant Olvera approached him, and Smith's left hand was reaching toward his waistband. (ECF No. 27-2 at 50.) Defendant Olvera believed Smith was trying to draw him in to shoot him. (*Id.*) Defendant Olvera ordered Smith to lie on the ground. (*Id.*) He then attempted to subdue Smith in order to handcuff him, but Smith resisted, kicking Defendant Olvera and refusing his orders to present his hands. (*Id.*) At his deposition, Smith conceded that he was wearing baggy sweatpants and that it was reasonable to believe, after the chase, that he may have been carrying a weapon. (ECF No. 27-3 at 45–46.) Defendant Olvera struck Smith four times with his baton, hitting Smith's upper left arm, upper right leg, lower right leg, and the outer part of Smith's forearm. (ECF No. 27-2 at 51.) Defendant Olvera wrote in his police report that the close quarters prevented him from deescalating by moving elsewhere or pointing his handgun to order Smith to stop. (*Id.* at 50.)

According to Smith, when Defendant Olvera approached him, he was already on the ground, had his hands out, was lying on his stomach, and lacked "the ability to resist." (ECF No. 5 at 4.) At that time, Smith had a torn rotator cuff, bad hip, and bad knee, and occasionally used a wheelchair, which was visible in the cab of his truck from body-cam footage. (*Id.*) Smith argues that "there is no way possible, physically that I aggressively resisted." (*Id.* at 5.) Smith contends that Defendant Olvera hit him more than four times with his baton, including at least once in the neck or face, which broke at least three of his teeth. (ECF No. 5 at 6–7.)

Defendant Olvera's body-worn camera stopped working during the 20 seconds when he used force against Smith, so the video only shows the first five seconds. (ECF No. 27-4 (Olvera) at 6:19–40 (approximate duration of use of force), 6:24 to 9:29 (Olvera's body-camera video obscured).) The audio from Defendant Olvera's body camera continued working and makes clear that Defendant Olvera yelled "stop reaching," "put your hands behind your back," "stop reaching for your hands," and "give me your hands." (*Id.* at 6:19–6:37.) Body-camera footage from Defendants Taylor and Ballensky, who arrived seconds after Defendant Olvera struck Smith with his baton, shows Smith to be face down on the ground and immobile, with his right hand around one inch away from his waist. (ECF No. 27-4 (Taylor) at 2:00 – 2:20; ECF No. 27-4 (Ballensky) at 6:45–7:05.) Defendant Ballensky took Smith's free right hand and helped Defendant Olvera place it in handcuffs. (ECF No. 27-4 (Ballensky) at 6:45-7:05.)

After Smith was handcuffed, Defendants walked him to a parking lot, where he waited in handcuffs until paramedics arrived and took him to the hospital. (ECF No. 27-4 (Olvera) at 17:00–22:00.)

### C. Relevant Police Policies

In their motion, Defendants include an expert report from Matthew Greely,

3

an experienced police officer. (ECF No. 27-1 at 8.) The expert report describes the levels of force that officers are trained to employ or avoid when using baton strikes as green, yellow, and red. Green, or "minimal strike zones," include "the shoulder blades, shoulders, upper arms, forearms, hands, upper thighs, shins, calf muscles and feet." (*Id.* at 29.) Yellow, or "moderate to serious strike zones," include "the collar bone, rib cage, upper abdomen, groin, knee joints, and elbow joints." (*Id.*) Red, or "deadly force strike zones," include "the temple, eyes, head throat, spine, and kidneys." (*Id.*) Police officers "are trained to avoid . . . red strike zones (unless intentionally using deadly force)." (*Id.*) The report describes Defendant Olvera's baton strikes to Smith's upper left arm, upper right leg, lower right leg, and outer forearm as "yellow or green," meaning they impacted "acceptable strike zones" that are "not vulnerable areas." (*Id.*)

### D. Smith Discovers Injuries

Smith claims to have suffered injuries that are inconsistent with green- and yellow-zone baton strikes. Smith believes he lost consciousness after Defendant Olvera struck him three times, and he came to believe that Defendant Olvera struck him in the neck, head, and face when he saw pictures of his injuries after the arrest. (ECF No. 27-3 at 41–42.) Among these injuries were broken bones in his right forearm, broken teeth, and welts consistent with a baton strike on his neck and face. (*Id.*; ECF No. 5 at 7.) Smith sued Defendant Olvera for using excessive force and Defendants Taylor and Ballensky for failing to intervene. (ECF No. 5.) The parties conducted discovery, and Defendants moved for summary judgment.

## II.     LEGAL STANDARD

A "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the

4

nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are drawn in the nonmovant's favor. *See id.* at 255. Where a defendant moves for summary judgment based on a claim for which the plaintiff bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), but a plaintiff's verified complaint "may be used as an opposing affidavit" for opposing summary judgment. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995). "Courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (citing *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010))

Once government-official defendants raise qualified immunity as a defense, they avoid liability if the plaintiff cannot show that they violated a federal constitutional right and that the violation was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (internal quotation marks and citations omitted). If the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right," *Saucier*, 533 U.S. at 201, the court then considers if the right was clearly established at the time of the alleged violation. *Id.* A right is clearly established if, at the time of the challenged conduct, "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citations and quotations omitted).

**III.    DISCUSSION**

In their motion for summary judgment, Defendants argue that they are entitled to qualified immunity and that Smith has failed to produce evidence

showing a constitutional violation. (ECF No. 27.) The Court considers Smith's claims against Defendants Taylor and Ballensky before addressing those against Defendant Olvera.

### A. Taylor and Ballensky's Failure to Intervene

Defendants Taylor and Ballensky argue that Smith cannot show that they failed to intervene while Defendant Olvera used excessive force. Factual allegations that are "blatantly contradicted" by video evidence are not considered when deciding a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). By the time Defendants Taylor and Ballensky arrived, Defendant Olvera had stopped beating Smith with his baton. (ECF No. 27-4 (Taylor) at 2:00 – 2:20; ECF No. 27-4 (Ballensky) at 6:45–7:05.) From this point forward, there were no more uses of force. (*See* ECF No. 27-4 (Ballensky) at 7:05–20:00.) The video evidence contradicts the allegation that Defendants Taylor and Ballensky failed to intervene while Defendant Olvera used excessive force against Smith. Accordingly, there is no issue of fact on these claims, and the Court grants summary judgment to Defendants Taylor and Ballensky.

### B. Whether Olvera Violated Smith's Rights

Defendant Olvera argues that he did not use excessive force when striking Smith with the baton on Smith's legs and arms. Smith argues that Defendant Olvera used excessive force because Smith did not resist arrest, Defendant Olvera struck him with the baton on his neck or head, and Defendant Olvera could have used hands-on physical holds instead of his baton. (ECF No. 5 at 2, 4–7.)

Smith's excessive force claim is based on Defendant Olvera beating him with a baton after he had surrendered. The Fourth Amendment bars police officers from using excessive force to carry out an arrest. *Graham v. Connor*, 490 U.S. 386 (1989). Officers "may only use such force as is 'objectively reasonable' under the circumstances." *Jackson v. City of Bremerton,* 268 F.3d 646, 651 (9th Cir.2001) (citing *Graham,* 490 U.S. at 397). Whether a particular use of force is

1 reasonable requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). The "reasonableness" of a particular use of force must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The facts must be viewed in the light most favorable to Plaintiff, the non-moving party. *Smith v. City of Hemet* 394 F.3d 689, 701 (9th Cir. 2005). "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Id.*

### 1. Nature of the Intrusion

Whether Defendant Olvera's use of force was reasonable depends on the type and amount of force he inflicted on Smith. Baton blows are "capable of inflicting significant pain and causing serious injury." *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011). Courts consider baton blows to be an "'intermediate force' that, while less severe than deadly force, nonetheless present a significant intrusion upon an individual's liberty interests." *Id.* (citing *Smith*, 394 F.3d at 701–02).

Defendant Olvera maintains that he tempered his force and avoided striking vulnerable areas. Defendant Olvera states that he only struck Smith with his baton once on his upper left arm, upper right leg, lower right leg, and outer forearm. (ECF No. 27-2 at 50 – 51.) Defendants' expert report explains that these areas are yellow or green "acceptable strike zones." (ECF No. 27-1 at 29.) The expert report further states that officers "are trained to avoid the red strike zones (unless intentionally using deadly force) which include the temple, eyes, head, [and] throat." (*Id.*) Defendant Olvera's camera did not record video of the use of

force, so it does not inform the Court's decision. *See Hughes v. Rodriguez*, 31 F.4th 1211, 1219-20 (9th Cir. 2022).

Smith maintains that he was hit in the neck and face with the baton. (ECF No. 5 at 7; ECF No. 27-3 at 41–42.) Smith states that he believes that baton strikes to his face and neck broke three of his teeth and bloodied his face. (ECF No. 5 at 7.) Defendants respond that the injuries to Smith's head came from crashing his truck multiple times during the chase while not wearing a seatbelt. (ECF No. 27 at 8.) Defendant Olvera wrote in his police report that Smith was bleeding from the face when he first encountered him and that he found a trail of blood in the snow from the car when he returned to the scene later in the day. (ECF No. 27-2 at 47, 51, 52.) Smith says that if he had been bleeding from crashing his car, there would have been more blood in his truck, and no blood appears on the steering wheel or the driver's seat in the bodycam footage. (ECF No. 27-3 at 41; ECF No. 27-4 (Olvera) at 12:55–13:35.)

Viewing the facts in the non-moving party's favor, a reasonable juror could find that Defendant Olvera struck Smith in the face and neck. Whether this is intermediate or deadly force, "there is no question that its use against an individual is a sufficiently serious intrusion upon liberty that . . . must be justified by a commensurately serious state interest." *Young*, 655 F.3d at 1162–63.

### 2. Governmental Interests

Courts evaluate the government's interest in using force by examining three core factors: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (citing *Graham*, 490 U.S. at 396). These factors are not exclusive, and courts "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a

particular case, whether or not listed in *Graham*." *Id.* (internal quotation marks and citation omitted). Other factors examined include the type and amount of force; alternative available methods of taking a suspect into custody; and whether it was practical to warn of the imminent use of force. *See* Ninth Circuit Model Civil Jury Instruction 9.25 (rev. Nov. 2024).

### a. Severity of the Crime

Defendants argue that Smith's underlying offenses were serious, while Smith argues that he had surrendered by the time Defendant Olvera used force. The severity of the crime at issue is both a proxy for how dangerous a suspect is at the time force is applied and an independent factor in deciding a constitutional violation. *S.R. Nehad v. Browder,* 929 F.3d 1125, 1136 (9th Cir. 2019) (discussing *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003), *Lowry v. City of San Diego*, 858 F.3d 1248, 1257 (9th Cir. 2017)). Smith evaded officers in a high-speed chase before the arrest, hit other cars with his truck, and sped through yards and residential areas before hitting a tree. (ECF No. 27-3 at 48–52.) Defendant Olvera recommended charges of assault with a deadly weapon, assault on a police officer, attempted homicide, felony evading with a motor vehicle, and felony vandalism. (ECF No. 27-2 at 48.) This factor, viewed in the light most favorable to Smith, weighs in favor of finding the use of force reasonable.

### b. Immediate Threat to the Officers' Safety

Defendants argue that Smith posed an immediate threat because Smith was not compliant with Defendant Olvera's orders, Smith resisted arrest, and Defendant Olvera reasonably believed that Smith had a weapon. (*See* ECF No. 27 at 21.) Smith argues that he was surrendering and did not present an immediate threat of danger. (ECF No. 5 at 5–7.)

"The most important factor under *Graham* is whether the suspect posed an immediate threat to the safety of the officers or others." *Bryan*, 630 F.3d at 826 (internal quotation marks and citation omitted). Even if the plaintiff is suspected

of a serious crime, the relevant question is whether the plaintiff is dangerous at the time force is applied. *See Andrews v. City of Henderson*, 35 F.4th 710, 717 (9th Cir. 2022). A close look at the record presents factual disputes about the danger Smith posed after leaving his vehicle. Upon leaving his truck, Smith had his hands up and appeared ready to surrender. (ECF No. 27-4 (Olvera) at 6:15–20.) Smith was attempting to comply with Defendant Olvera's order to "get on the ground" and "show your hands." (*See* ECF No. 5 at 5; ECF No. 30 at 2.) The videos from Defendants Taylor and Ballensky's body-worn cameras show Smith immobile, moaning in pain on the ground and not actively resisting seconds after Defendant Olvera had struck him several times. (ECF No. 27-4 (Taylor) at 2:00 – 2:20; ECF No. 27-4 (Ballensky) at 6:45–7:05.) By the time Defendant Ballensky reached Smith to put on handcuffs, Smith's left hand was on his back, and his right hand was close to his waistband, but he was not reaching for his pocket. (ECF No. 27-4 (Taylor) at 2:00 – 2:20.)

Defendant Olvera wrote that Smith physically resisted arrest and that he reasonably believed that Smith had a weapon. His police report describes Smith using his legs to resist arrest after being forced on the ground. (ECF No. 27-2 at 50). Smith suggests that Defendant Olvera's description of Smith resisting arrest was impossible because Smith's several leg injuries physically prevented him from kicking or otherwise physically resisting Defendant Olvera. (*See* ECF No. 5 at 5–7.) Defendant Olvera also feared that Smith had a weapon in his waistband or pocket. (*Id.*) Smith conceded that he was wearing baggy sweatpants and that a police officer could reasonably believe that he was carrying a weapon in them. (ECF No. 27-3 at 45–46.)

Viewing the facts in the non-moving party's favor, a reasonable juror could find that even if Defendant Olvera reasonably believed that Smith was armed, Smith was not resisting arrest. This factor weighs in favor of finding the use of force unreasonable. *See Andrews*, 35 F.4th at 717 (court considers danger the

suspect poses at the time force is applied).

### c. Attempting to Evade Arrest

Whether a suspect is "actively resisting arrest or attempting to evade arrest by flight" factors into whether use of force is reasonable. *Graham,* 490 U.S. at 396. While Smith had been attempting to evade arrest in his truck before the use of force, it is not clear whether Smith was trying to evade police when Defendant Olvera used force. In Smith's deposition, he stated that he intended to surrender upon stepping out of his car and seeing that a fence blocked his way. (ECF No. 27-3 at 45.) By the time Defendant Olvera encountered him, Smith had his hands up and was dropping to the ground, as Defendant Olvera commanded him to do. (ECF No. 27-4 (Olvera) at 6:15–20.) A reasonable trier of fact could conclude that Smith was not evading arrest at the time Defendant Olvera used force.

### d. Type and Amount of Force Used

The type and amount of force also factors into the government's interest in using force. The pertinent question of fact here is whether Defendant Olvera struck Smith in the head and neck with the baton. (*See supra* III.B.1.) If Defendant Olvera only struck Smith in the legs and arm, this factor would be either neutral or weigh slightly in favor of Defendant Olvera. *See Felarca v. Birgeneau,* 891 F.3d 809, 817 (9th Cir. 2018) (torso and extremity strikes less severe than head strikes). If Defendant Olvera struck Smith in the neck and head, as Smith claims, then this factor would weigh in favor of finding the use of force unreasonable. *See Young,* 655 F.3d at 1162 (describing "head strikes with an impact weapon" as "deadly force").

### e. Availability of Alternative Methods

Defendant Olvera argues that he lacked other options to subdue Smith, while Smith argues that Defendant Olvera could have used hands-on holds. Police officers "need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within [a reasonable]

11

range." *Scott*, 39 F.3d at 915. Officers must "consider [w]hat other tactics if any were available, and if there were clear, reasonable and less intrusive alternatives to the force employed, that militate[s] against finding [the] use of force reasonable." *Glenn v. Washington Cnty.*, 673 F.3d 864, 876 (9th Cir. 2011) (internal quotation marks and citations omitted). Defendant Olvera states that he "could not move to an area of advantage nor transition to my handgun to order [Smith] at gunpoint to show me his hands . . . to deescalate the situation." (*See* ECF No. 27-2 at 51.) Smith argues that Defendant Olvera "could have used basic hands-on physical holds approved by the Nevada Police Officers Standards and Training." (ECF No. 5 at 5.) Defendants' expert report states that officers "are trained to avoid . . . red strike zones," which include the head and throat "unless intentionally using deadly force." (ECF No. 27-1 at 29.) Viewing these disputed facts in favor of the non-moving party, a reasonable juror could find that Defendant Olvera struck Smith on the head and throat. A hands-on hold or body strikes would have been a reasonable, less intrusive alternative, *Glenn*, 673 F.3d at 876, so this factor weighs in favor of Smith.

### f. Warnings

"[W]arnings should be given, when feasible, if the use of force may result in serious injury." *Glenn*, 673 F.3d at 684. In this case, Defendant Olvera gave several warnings, like "show me your hands" and "stop resisting." (ECF No. 27-4 (Olvera) at 6:15–20.) Like the plaintiff in *Glenn*, it is not clear that Smith understood these warnings because of his inebriated state. 673 F.3d at 684. Additionally, it is not clear that Smith was physically able to comply because of pain and lack of mobility in his knees and hips. Additionally, Smith can be heard in the audio screaming something like, "my hands are behind my back!" as he is struck. (ECF No. 27-4 (Olvera) at 6:26–30.) Because Defendant Olvera warned Smith to present his hands, and because it is not clear that Smith was able to comply with this order, this factor is neutral or weighs slightly in favor of finding

the use of force reasonable.

### 3. Weighing the Interests

Determining if Defendant Olvera's strike was reasonable requires weighing the severity of the intrusion alongside the government interests at stake. A baton strike to the head is a severe intrusion that must be justified by serious government interests. *See Schroeder v. Cnty. of Nassau*, 158 F. Supp. 3d 123, 128 (E.D.N.Y. 2016) (triable issue of fact for excessive force where officer hit suspect fleeing from car chase in the head with baton); *Young*, 655 F.3d at 1162–63. At the same time, the government had an interest in using force to subdue Smith. Smith had evaded arrest and posed a danger to officers and the public up to the point where he crashed his car, which weighs in favor of finding the use of force reasonable. On the other hand, Smith was no longer evading the police when Defendant Olvera used force, it is unclear if he was resisting Defendant Olvera, and though Defendant Olvera may have justifiably believed that Smith had a weapon, he had alternatives to striking Smith in the head.

Accepting Smith's facts not contradicted by video as true, Defendant Olvera tackled Smith, a feeble, 57-year-old man kneeling with his hands up, then hit him in the head with his baton. (ECF No. 27-4 at 6:15-20; ECF No. 5 at 5.) This was a blow that Defendants' own expert suggested could be lethal. (ECF No. 27-1 at 29.) Based on these facts, a reasonable juror could find that Defendant Olvera used excessive force in violation of the Fourth Amendment.

### C. Clearly Established Law

At step two of the qualified immunity analysis, Smith must show that Defendant Olvera's conduct violated clearly established law. "Even if a government official violates a constitutional right, the official is entitled to qualified immunity unless the violated right was clearly established at the time of the incident." *Andrews*, 35 F.4th at 718. Clearly established means that "it would be clear to a reasonable officer that his conduct was unlawful in the

13

situation he confronted." *Saucier*, 533 U.S. at 202. "The Supreme Court has increasingly reiterated that to meet this standard a right 'must be defined with specificity' rather than 'at a high level of generality.'" *Andrews*, 35 F.4th at 718 (internal citations omitted). A "case directly on point," however, is not required. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 4-5 (2021) (citation omitted). Rather, "existing precedent must have placed the . . . constitutional question beyond debate." *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

Certain aspects of the law regarding Defendant Olvera's rights were clearly established when Defendant Olvera struck Smith in the head. It was clearly settled that baton blows to the head could constitute intermediate or deadly force which require either an immediate threat to the safety of the officer or others, serious underlying crimes, or a fleeing suspect. *See Young*, 655 F.3d at 1162, 1166. The relevant question is whether clearly established law prevented a reasonable officer from concluding that Smith posed an immediate threat to the safety of the officer, that Smith was engaged in a serious crime, or that Smith was fleeing.

No precedential decisions show that Defendant Olvera's conduct violated clearly established law. *Young v. County of Los Angeles* involves baton blows, but it is readily distinguishable from this case. In *Young*, an officer stopped Young, who was driving his truck without a seatbelt, and asked him for his registration. 655 F.3d at 1159. Young left his car to give the officer his registration, then refused the officer's instruction to return to his truck. *Id.* He instead sat on the sidewalk and ate a snack, while the officer pepper-sprayed him from behind then beat him with his baton. *Id.* at 1159–60. Another officer arrived on the scene to handcuff Young, and after Young was handcuffed, the first officer struck him with the baton again. *Id.* at 1160.

Unlike in *Young*, Defendant Olvera had reason to suspect that Smith was dangerous. Young did not pose a threat to the officer who approached him from

1   behind to spray him. *Id.* at 1164. Young's underlying crime and passive
2   disobedience to an officer's order did not justify any force, and Young was not
3   attempting to evade arrest. *Id.* at 1164–65. Smith, on the other hand, had
4   engaged officers in a high-speed chase in which Smith hit multiple cars,
5   endangered a pedestrian, hit a parked car, and failed to follow officer commands
6   or traffic rules. While Smith was not evading arrest when Defendant Olvera
7   tackled and hit him, he had been evading arrest, dangerously, for several minutes
8   before. This is enough to distinguish *Young*.

9       This case is also distinguishable from non-precedential decisions. In *Powell*
10  *v. City of Elko*, the Court found a constitutional violation when an officer struck
11  the plaintiff with a baton twice in the upper back and neck region, jumped on his
12  back, and pressed his face into the pavement, all while he was restrained by other
13  officers. *Powell v. City of Elko*, No. 3:21-CV-00418-ART-CSD, 2024 WL 4137289,
14  at *4 (D. Nev. Sept. 4, 2024), *appeal docketed*. Unlike in *Powell*, no other officers
15  were present for backup when Defendant Olvera used force against Smith, and
16  Defendant Olvera used significantly less force than the officer in *Powell*. *See id.*

17      In *Schroeder v. County of Nassau*, a New York federal district court found
18  a Fourth Amendment violation when, after the plaintiff led the police on a car
19  chase, the police officer hit the plaintiff in the head with a baton while he was
20  running away. 158 F. Supp. 3d at 128. The court found a potential constitutional
21  violation, but it also noted the "dearth of decisions at any federal level involving
22  facts sufficiently similar" that showed that the officer violated a clearly
23  established right. *Id.* at 130. Like in this case, there were arguable facts about
24  whether the officer believed the plaintiff posed a threat, and the suspect had
25  engaged the officer in a car chase before striking him in the head. *Id.* at 127–28.

26      But *Schroeder* alone cannot show that Defendant Olvera violated a clearly
27  established right. One out-of-circuit federal district court opinion does not
28  suffice. *See Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012)

(federal district court opinion and an intermediate state court opinion insufficient to create clearly established right); *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1016 (9th Cir. 2017) (two out-of-state, somewhat distinguishable federal district court decisions insufficient to show clearly established right).

The Court finds that although Smith has stated a potential substantive Fourth Amendment violation, he has failed to establish that a reasonable officer should have known that a baton strike to the head of a suspect who had engaged police in a high-speed car chase and may have been armed violated clearly established law. Accordingly, Defendant Olvera is entitled to qualified immunity from liability on Smith's claim for excessive force in violation of his Fourth Amendment rights.

### IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment (ECF No. 27).

The Court instructs the Clerk to enter judgment in favor of Defendants and close the case.

DATED: March 5, 2025

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

16